IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**JOHN DOE**,

        Plaintiff,

     v.                                                                        Case No. 1:24-cv-00880-WJ/GBW

**ST. JOHN'S COLLEGE, MARK ROOSEVELT,**
**individually and as an agent and employee of St.**
**John's College, CHRISTINA GUEVARA,**
**individually and as an agent and employee of St.**
**John's College, John and Jane Roes 1-5, individually**
**and as agents and employees of St. John's College**,

        Defendants.

**MEMORANDUM OPINION AND ORDER**
**GRANTING DEFENDANTS' PARTIAL MOTION TO DISMISS**

**THIS MATTER** comes before the Court on Defendants' ("College Defendants")[1] Motion to Dismiss (**Doc. 4**), Plaintiff John Doe's Response (**Doc. 13**), and College Defendants' Reply (**Doc. 19**). Upon review of the Complaint, pleadings, and applicable law, the Court finds the Motion is well-taken and, therefore, **GRANTS** the Motion to Dismiss Counts III and IV.[2]

**BACKGROUND**

John Doe filed a Complaint (**Doc. 1-2**) against his former college, and college officials, for their handling of an alleged sexual assault and its resultant Title IX investigation. Relevant here

---

[1] This partial motion to dismiss deals only with Counts III and IV—regarding § 1983 violations—and only with Defendants St. John's College, Mark Roosevelt, and Christina Guevara. Defense counsel titled these three Defendants, collectively, as "College Defendants." *See* **Doc. 4 at 1**. The Court mirrors this shorthand.
[2] At times, the parties' briefing mislabels the § 1983 claim. For example, the College Defendants correctly reference Counts III and IV in the introduction of their motion to dismiss (**Doc. 4 at 1**), but then they moved to dismiss Count VI in their conclusion. ***Id.* at 11**. Count VI deals with the breach of implied covenant of good faith and fair dealing. **Doc. 1-2 at 59–62**. The Court overlooks this error in the motion, response (**Doc. 13 at 19**), and reply (**Doc. 19 at 8**).

1

are Doe's third and fourth causes of action alleging violations of 42 U.S.C. § 1983 based on a denial of his Fourteenth Amendment rights (*id.* **at 51–55**).

## LEGAL STANDARD

To survive a Rule 12(b)(6) motion, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible if the complaint contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Under Rule 12(b)(6), the Court: (1) accepts all well-pleaded facts as true, and (2) construes these facts in the light most favorable to the plaintiff. *Waller v. City & Cnty. of Denver*, 932 F.3d 1277, 1282 (10th Cir. 2019). At the same time, though, this Court "disregard[s] conclusory statements and look[s] only to whether the remaining factual allegations plausibly suggest the defendant is liable." *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012).

A complaint need not be perfect, *see Lemmons v. Law Firm of Morris & Morris*, 39 F.3d 264, 267 (10th Cir. 1994), or even contain "detailed factual allegations." *Mengert v. United States*, 120 F.4th 696, 712 (10th Cir. 2024). But it must contain "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. Simply reciting the elements of a cause of action which are supported by nothing more than "mere conclusory statements" is insufficient. *Cline v. Clinical Perfusion Sys.*, 92 F.4th 926, 931 (10th Cir. 2024).

\* \* \*

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. When bringing a § 1983 claim, the complaint must sufficiently plead the element of state action. *See Dicesare v. McAnally*, 657 F. App'x 800, 802 (10th Cir. 2016) (unpublished) ("To state a claim under § 1983, the complaint must allege that the defendants acted 'under color of state law.'" (quoting *Polk Cnty. v. Dodson*, 454 U.S. 312, 315 (1981)); *see also Yanaki v. Iomed, Inc.*, 415 F.3d 1204, 1207 (10th Cir. 2005).

Various forms of private action can constitute state action. *Cf. Gilmore v. Salt Lake Cmty. Action Program*, 710 F.2d 632, 635–36 (10th Cir. 1983) (discussing various "state action" tests); *Wittner v. Banner Health*, 720 F.3d 770, 775–81 (10th Cir. 2013) (same).

One such avenue is by showing that the state insinuated itself into a position of interdependence with a private party such that it must be recognized as a joint participant in the challenged activity. *Wittner*, 720 F.3d at 778. This is a high burden—because even extensive state regulation, the receipt of substantial state funds, or the performance of important public functions do not necessarily establish the kind of symbiotic relationship between the government and a private entity that is required for state action. *Gallagher v. Neil Young Freedom Concert*, 49 F.3d 1142, 1451 (10th Cir. 1995) (citing *S.F. Arts & Ath., Inc. v. U.S. Olympic Comm.*, 483 U.S. 522, 547 n.29 (1987)).

Another way of proving state action is the nexus test. But "[a] nexus exists only when a state has exercised coercive power over the challenged activity." *Wittner*, 720 F.3d at 775 (10th Cir. 2013); *Blum v. Yaretsky*, 457 U.S. 991, 1007–08 (1982). Substantial entanglement with state rules and state funding does not mean state action. The question is "whether the challenged activity results from the State's exercise of coercive power." *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 296 (2001).

State action also exists if challenged activity is a traditional and exclusive function of the state. Once again, though, this test is "difficult to satisfy." *Gallagher*, 49 F.3d at 1456. That's because very few functions are exclusively reserved to the state.

## FACTS[3]

St. John's College was founded in 1696 as King William's School by the then-Colony of Maryland. **Doc. 1-2 at ¶ 207**. After the Revolutionary War, the now State of Maryland granted a charter to St. John's College under the laws of Maryland. *Id.*

In the 1940s, the College instituted a Polity. *Id.* **at ¶ 210**; *see* **Doc. 13-1**. This Polity/Charter is the "College's principal governing document, overseen by the Board in consultation with the faculty." **Doc. 1-2 at ¶ 210**. Around the same time, a second St. John's College campus was established in Santa Fe, New Mexico. *Id.* **at ¶ 209**. And, per the latest version of this Polity, "the Governors of the States of Maryland and New Mexico shall act ex officio as two of the total number of Visitors and Governors of said college during their respective terms in said offices . . . " **Doc. 13-1 at 3, ¶ IV**.

St. John's College is a "private college" that receives "federal and state funding." **Doc. 1-2 at ¶ 12**. Part of this federal funding was overseen by the Department of Education's Office of Civil Rights. *See id.* **at ¶¶ 214–27**.

Around 2011, the Department of Education's Office of Civil Rights issued a "Dear Colleague Letter." *Id.* **at ¶¶ 214–216**. In part, this letter states that "withdraw[al of] Federal funding" may result when a "recipient does not . . . compl[y]" with Title IX. *Id.* **at ¶ 216**. Then,

---

[3] When ruling on a 12(b)(6) motion, this Court considers only the contents of the complaint. But there are exceptions to this rule. *See Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009). One such exception is any "document incorporated by reference . . . when no party disputes its authenticity." *Clinton v. Sec. Ben. Life. Ins. Co.*, 63 F.4th 1264, 1275 (10th Cir. 2023) (cleaned up).
   Here, the parties agree the Court can consider the Charter/Polity. *See* **Doc. 13 at 13 & n.4**; **Doc. 19 at 4 & n.2**; *see also* **Doc. 1-1 at ¶¶ 207–213** (incorporating by reference).

on May 6, 2020, the Department of Education released its final regulations on Title IX—which became effective August 14, 2020. *See id.* **at ¶ 232**.

John Doe, through counsel, alleges St. John's College was under an "ever-looming threat of losing" this Department of Education funding. **Doc. 1-2 at ¶ 235**.

Fast forward a few years. John Doe enrolled at St. John's College in the fall of 2022. **Doc 1-2 at ¶¶ 22–25**. That August, John Doe went to a party. *Id.* **at ¶ 26**. Mary Roe was also at the party. *Id.* **at ¶ 28**. The pair drank and flirted before leaving the party. *Id.* **at ¶¶ 26–65**. Sexual acts (but not sexual intercourse) took place. *Id.* **at ¶¶ 49, 50, 55, 56**. Nevertheless, in September, Mary Roe filed a Title IX complaint against John Doe. *Id.* **at ¶¶ 25, 61, 65**.

The Complaint in this case then discusses the shortcomings of the Title IX investigation in detail. *See* **Doc. 1-2 at ¶¶ 66–86**. John Doe also discusses issues with the filing of the Title IX complaint. *Id.* **at ¶¶ 87–104**. According to Doe, the investigation was handled poorly—and students on campus became aware of the allegation against him. *See id.* **at ¶¶ 105–161**. Moreover, Doe suffered because of the College Defendants' handling of the complaint. *Ibid.*

After being "repeatedly harassed, tormented, bullied, assaulted, threatened, intimidated, teased, ostracized, terrorized, and even unlawfully imprisoned by his fellow St. John's students," *id.* **at ¶ 162**, John Doe requested a temporary mental health leave of absence. *Id.* **at ¶¶ 174–75**. His request was denied. *Id.* **at ¶ 176**. Instead, Doe submitted a withdrawal from St. John's College. *Id.* **at ¶ 181**.

\* \* \*

With respect to the § 1983 claims, John Doe alleges that St. John's College is a "federally funded education institution." **Doc. 1-2 at ¶ 269**. He argues that the College Defendants "have a duty to provide students with equal protection and due process of law by and through any and all

5

policies and procedures set forth by the College." **Doc. 1-2 at ¶ 279**. In support of this notion, Doe avers that "Fourteenth Amendment due process protections are required in higher educational disciplinary proceedings." *Id.* **at ¶ 280**. He goes on to say that the College Defendants "acted under the color of state law when they showed intentional, outrageous, and reckless disregard for [his] constitutional rights." *Id.* **at ¶¶ 286 & 295**. Finally, Doe claims the College Defendants' actions were "deliberate and conscious and undertaken with the knowledge, control, direction and/or a result of the failure to supervise by the highest levels of the administration at St. John's College, including but not limited to President Roosevelt." *Id.* **at ¶ 298**.

## DISCUSSION

**I. State Action Tests**

John Doe does not dispute that St. John's College is a private college. *See* **Doc. 1-2 at ¶ 12**. Or that the employees are private employees. *Id.* **at ¶¶ 13–15**. Rather, Doe's § 1983 claims rest entirely on state action theory. According to him, the college "acted under the color of state law when [it] showed intentional, outrageous, and reckless disregard for Doe's constitutional rights." *Id.* **at ¶¶ 286 & 295**.

The Court is hesitant to find state action here. In no small part, that hesitancy comes from the long line of cases—from both in-circuit and out-of-circuit (ranging from various district courts to the court of appeals)—which have consistently rejected John Doe's very argument.[4] The First,

---

[4] *See, e.g., Vengalattore v. Cornell Univ.*, 36 F.4th 87 (2d Cir. 2022); *Ezeani v. Reagan*, 2023 U.S. App. LEXIS 20566 (5th Cir. Aug. 8, 2023) (unpublished); *Brown v. Cioffi*, 2024 U.S. App. LEXIS 25690 (6th Cir. Oct. 10, 2024) (unpublished); *Campbell v. Columbia Univ. Sch. of Prof'l Studies*, No. 22-cv-8255, 2022 U.S. Dist. LEXIS 194460, at *7 (S.D.N.Y. Oct. 21, 2022) ("Columbia University [is] not engaged in state action under any of these three tests. Defendants thus are private parties not subject to suit under Section 1983."); *Mazile v. Larkin Univ. Corp.*, No. 23-cv-23306, 2024 U.S. Dist. LEXIS 128457, at *18 (S.D. Fla. July 22, 2024) (citing cases); *Richards v. Duke Univ.*, 480 F. Supp. 2d 222, 239 (D.D.C. 2007) (explaining the receipt of federal funds "do[es] not elevate [] private educational institutions to the status of state actor"); *Samuel v. Univ. of Pittsburgh*, 375 F. Supp. 1119 (W.D. Pa. 1974).

Second, Third, Sixth, Seventh, Eighth, Ninth, Eleventh, and D.C. Circuits have dismissed § 1983 lawsuits against private colleges on these very grounds. *See, e.g., Klunder v. Brown Univ.*, 778 F.3d 24 (1st Cir. 2015); *Krohn v. Harvard Law Sch.*, 552 F.2d 21 (1st Cir. 1977); *Albert v. Carovano*, 851 F.2d 561 (2d Cir. 1988); *Elansari v. Univ. of Pa.*, 779 F. App'x 1006 (3d Cir. 2019) (unpublished); *Doe v. Oberlin Coll.*, 60 F.4th 345 (6th Cir. 2023); *Slovinec v. DePaul Univ.*, 332 F.3d 1068 (7th Cir. 2003); *Cannon v. Loyola Univ. of Chi.*, 784 F.2d 777 (7th Cir. 1986); *Sanders v. City of Minneapolis*, 474 F.3d 523 (8th Cir. 2007); *Heineke v. Santa Clara Univ.*, 965 F.3d 1009 (9th Cir. 2020); *Driessen v. Univ. of Miami Sch. of Law Child. & Youth Law Clinic*, 835 F. App'x 489 (11th Cir. 2020) (unpublished); *Williams v. Howard Univ.*, 528 F.2d 658 (D.C. Cir. 1976). Plus, the Supreme Court has explained "federal funding provisions provide no basis for private enforcement by [42 U.S.C.] § 1983." *Gonzaga Univ. v. Doe*, 536 U.S. 273, 280 (2002).

No doubt, this case law matters. But the Tenth Circuit's handling of the topic is of particular importance. So, how has that Court resolved this issue? In a case against the University of Denver, a private school, the Tenth Circuit held that a plaintiff's reliance "solely on evidence of the federal government's involvement in [a private university's] affairs . . . has no bearing on whether the school is a state actor under the Fourteenth Amendment." *Doe v. Univ. of Denver*, 952 F.3d 1182, 1187–88 (10th Cir. 2020). Of note, the plaintiff in that case also relied on: (1) the college's compliance with guidance from the Department of Education regarding Title IX (and the 2011 Dear Colleague Letter), (2) supposed "pressure" resultant from the Department, and (3) the threatened loss of federal funding for noncompliance. *See id.* at 1188. The *Doe* Court also explained that "evidence regarding the *federal* government's involvement with a private school . . . has no bearing on whether the school is a state actor under the Fourteenth Amendment." *Id.* (citing *Browns v. Mitchell*, 409 F.2d 593, 595 (10th Cir. 1969)).

7

\* \* \*

Despite this precedent, Doe argues that the College Defendants acted under color of law—bringing their conduct within the reach of § 1983. *See* **Doc. 13 at 11–12**. Specifically, John Doe argues that the College Defendants' actions fall within either the: (1) symbiotic relationship test, *see id.* **at 13–15**; (2) nexus test, *see id.* **at 15–17**; or (3) public function test, *see id.* **at 18–19**. The Court now evaluates the sufficiency of John Doe's Complaint (**Doc. 1-2**) in light of these tests.

### A. Symbiotic relationship test

John Doe argues that St. John's College's receipt of public funding, tuition structure, and composition of its board of directors has made the state so far insinuated in a position of interdependence with St. John's that the state must be recognized as a joint participant. *See* **Doc. 13 at 13–17**. Case law shows this is not enough, though. *See* **Doc. 19 at 3–7**.

Public funding is not sufficient to establish state action. *See Rendell-Baker v. Kohn*, 457 U.S. 830, 846 (1982); *Blum*, 457 U.S. at 1011.

Neither is St. John's tuition structure. For one, nothing about tuition is mentioned in the Complaint. *See* **Doc. 1-2**. To the extent John Doe argues federal tuition assistance creates state action—that is incorrect. If St. John's simply offers lower tuition for in-state students, though, that involves no government action—it's simply a business decision. *Compare* **Doc. 13 at 14**, *with* **Doc. 19 at 3–4**. Even if "virtually all of the school's income is derived from government funding," a private college does not become a state actor. *Heineke*, 965 F.3d at 1013 (quoting *Rendell-Baker*, 457 U.S. at 840). Second, Doe cites no cases in support of his proposition that offering in-state tuition as a private school establishes state action.[5]

---

[5] Although only persuasive authority, several district courts have reached the same conclusion. *See, e.g., Dauven v. George Fox Univ.*, No. 09-cv-305, 2010 U.S. Dist. LEXIS 142066 (D. Or. Dec. 2, 2010); *Stewart v. N.Y. Univ.*, 430 F. Supp. 1305 (S.D.N.Y. 1976); *Milner v. Nat'l Sch. of Health Tech.*, 409 F. Supp. 1389 (E.D. Pa. 1976); *Brownley v. Gettysburg Coll.*, 338 F. Supp. 725 (M.D. Pa. 1972).

Lastly, the fact the Governors of Maryland and New Mexico are *ex officio* board members (**Doc. 13-1 at 3, § IV**) does not show a symbiotic relationship. These two Governors make up a board of between thirteen and sixty individuals. *See id.*; *see also* **Doc. 19 at 5**. Courts have found similar boards comprised of public officials to be "insufficiently linked . . . to warrant a finding of state action." *Crowder v. Conlan*, 740 F.2d 447, 453 (6th Cir. 1984); *see also Madry v. Sorel*, 558 F.2d 303, 305–06 (5th Cir. 1977); *Moore v. Williamsburg Reg'l Hosp.*, 560 F.3d 166, 178–79 (4th Cir. 2009) (Wilkinson, J.).

\* \* \*

"[E]xtensive state regulation, the receipt of substantial state funds, and the performance of important public functions" are not definitive proof of a symbiotic relationship between the government and a private entity. *Gallagher*, 49 F.3d at 1451 (citations omitted). John Doe's Complaint does not sufficiently allege state action by St. John's College under the symbiotic relationship test.

### B. Nexus test

Next, Doe argues that St. John's College is "sufficiently close" with the state—such that the college's action may be attributed to New Mexico under the nexus test. **Doc. 13 at 15–17**. Once again, precedent says otherwise.

"[T]he existence of governmental regulations, standing alone, does not provide the required nexus." *VDARE Found. v. City of Colo. Springs*, 11 F.4th 1151, 1161 (10th Cir. 2021) (quoting *Gallagher*, 49 F.3d at 1448). As the College Defendants point out, "[s]uch a rule would 'convert every [private entity] into a governmental actor every time it complies with a presumptively valid, generally applicable law.' *Sutton v. Providence St. Joseph Med. Ctr.*, 192 F.3d 826, 838–39 (9th Cir. 1999)." **Doc. 19 at 6**.

### *C. Public function test*

Finally, Doe argues that the state's delegation of a "traditionally exclusive" state function to a private party proves state action. **Doc. 13 at 18**. But the public function test is "difficult to satisfy." *Gallagher*, 49 F.3d at 1456. That's because very few functions are exclusively reserved to the State. *Id.* (quoting *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 158 (1978) (quoting *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 356 (1974))).

According to the College Defendants, the Complaint does not allege St. John's College is performing an exclusive public function for the state of New Mexico (**Doc. 4 at 7 & 10–11**). In response (**Doc. 13**), John Doe suggests that St. John's College is a state actor because: (1) the college receives federal and state government funding, (2) is required to comply with applicable state and federal laws, and (3) investigated, conducted, and adjudicated allegations of "criminal wrongdoing." *Id.* **at 18**. But courts have routinely found that private universities who investigate policy violations are "not exercising a public function." *Doe v. Wash. Univ.*, 434 F. Supp. 3d 735, 747 (E.D. Mo. 2020) (citing cases).[6]

\* \* \*

The case law is quite clear: higher education is not an exclusively public function. *See Berríos v. Inter Am. Univ.*, 535 F.2d 1330, 1333 (1st Cir. 1976) ("Higher education is not generally regarded as exclusively a function 'traditionally associated with sovereignty.'"); *Grafton v.*

---

[6] *See, e.g., Woytowicz v. George Washington Univ.*, 327 F. Supp. 3d 105, 116 (D.D.C. 2018) (noting that "many private entities routinely investigate and self-police to ensure that they are in compliance with federal laws"); *Collins v. Nw. Univ.*, 164 F. Supp. 3d 1071, 1077 (N.D. Ill. 2016) (finding that private university's human resources department did not act "under the color of law" when investigating and disciplining employees for university policy violations); *Doe v. Washington & Lee Univ.*, No. 14-cv-52, 2015 U.S. Dist. LEXIS 102426, at \*22–25 (W.D. Va. Aug. 5, 2015) (finding no due process violation where plaintiff did not "allege that the government deprived W&L of its autonomy to investigate and adjudicate charges," or plead that "the government participated in the decision-making process at any stage of the proceedings").

*Brooklyn Law Sch.*, 478 F.2d 1137, 1140 (2d Cir. 1973); *White Coat Waste Project v. Greater Richmond Transit Co.*, 35 F.4th 179, 194 n.10 (4th Cir. 2022) (noting that "higher education" is not a "traditional and exclusive public function[]"); *Greenya v. George Washington Univ.*, 512 F.2d 556, 561 n.10 (D.C. Cir. 1975); *cf. Rendell-Baker*, 457 U.S. at 840–42 (1982) (finding that the education, although a public function, is not the exclusive prerogative of the state).

Because John Doe has failed to allege that St. John's College performs a function that is traditionally and exclusively the province of the state, he has failed to allege that the College Defendants are state actors under the public function test. *See D.B. v. Griffith Ctrs. for Child. Inc.*, No. 23-cv-1071, 2024 U.S. Dist. LEXIS 37553, at *23 (D. Colo. Mar. 4, 2024) (Brimmer, C.J.). This conclusion is predicated, in part, on the absence of any showing that the state government exercised any role in the investigation[7] of John Doe at St. John's College. Further supporting the dismissal is the fact that higher education is not a "traditionally exclusive" state function.

**II. Federal Action**

Doe's Complaint also alleges that St. John's College mishandled his Title IX case because of "pressure from . . . the United States Department of Education, under fear of losing federal funds." **Doc. 1-2 at ¶ 259**. Assuming this fact sufficiently alleges government action—this can be read as alleging the College Defendants were federal officials. If so construed, this claim must also be dismissed.

That's because John Doe's allegation would arise under *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971).[8] But *Bivens* claims cannot be brought against entities. *See*

---

[7] To be clear, the Complaint alleges that the investigation was handled by "outside investigators." *See generally* **Doc. 1-2**. The first group mentioned is "Green River Solutions." *Id.* **at ¶¶ 124 & 125**. Then, later, the Complaint alleges the investigation was handled by "D. Stafford & Associates." *Id.* **at ¶ 134**. Doe's Complaint does not claim that either of these outside investigators are state actors.

[8] Although *Bivens* hasn't been overruled, it's worth noting that many judges—and justices—are skeptical that *Bivens* claims exist. *See Egbert v. Boule*, 596 U.S. 482, 501–02 (2022) (citing cases). More recently,

*Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 66 (2001); *Kauffman v. Anglo-Am. Sch. of Sofia*, 28 F.3d 1223, 1225–28 (D.C. Cir. 1994). Nor can *Bivens* claims be brought against officials in their official capacity. *See Farmer v. Perrill*, 275 F.3d 958, 963 (10th Cir. 2001); *cf. Christopher v. Harbury*, 536 U.S. 403, 408 (2002) (explaining *Bivens* claims must be levied "against the officials in their individual capacities"). Without digging any further, then, the Court is required to dismiss John Doe's presumptive *Bivens* claim against the College Defendants.

## CONCLUSION

Plaintiff Doe does not sufficiently allege—nor does the applicable law support a finding—that the College Defendants are state actors. As such, his § 1983 claims in Counts III and IV fail to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6).

**IT IS THEREFORE ORDERED** that College Defendants' Partial Motion to Dismiss (**Doc. 4**) is **GRANTED**.

/s/
_____
WILLIAM P. JOHNSON
SENIOR UNITED STATES DISTRICT JUDGE

---

Tenth Circuit Judge Timothy Tymkovich concluded "*Bivens* claims are no longer judicially cognizable . . . ." *Mohamed v. Jones*, 100 F.4th 1214, 1235 (10th Cir. 2024) (Tymkovich, J., dissenting). Instead, *Bivens* is a "zombi[fied]," "brain-dead cause of action sustained by life support." *Wickline v. Cumberledge*, No. 23-cv-799, 2024 U.S. Dist. LEXIS 175777, at *19 (S.D.W. Va. Sept. 27, 2024) (quoting *Mohamed*, 100 F.4th at 1240). Ninth Circuit Judge Patrick Bumatay agrees. *See Garraway v. Ciufo*, 113 F.4th 1210, 1222 (9th Cir. 2024) (Bumatay, J., dissenting). As does Fifth Circuit Judge Don Willett. *See Byrd v. Lamb*, 990 F.3d 879, 884 (5th Cir. 2021) (Willett, J., specially concurring) ("*Bivens* today is essentially a relic, technically on the books but practically a dead letter . . . ."). Finally, Judge J. Harvie Wilkinson of the Fourth Circuit stated that *Bivens* actions should be approached "with skepticism." *Lebron v. Rumsfeld*, 670 F.3d 540, 548 (4th Cir. 2012).